UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVE NEIL SPEEDIE,<br><br>              Petitioner,<br><br>    v.<br><br>ALEXI DAWN SPEEDIE,<br><br>              Respondent. | CASE NO. 2:26-cv-00345-JHC<br><br>ORDER |

## I

### INTRODUCTION

This matter comes before the Court on Respondent Alexi Dawn Speedie's Motion to Compel Pursuant to FRCP 37.  Dkt. # 48.  The Court has considered the materials filed in support of and in opposition to the motion, pertinent portions of the record, and the applicable law.  Being fully advised, for the reasons below, the Court DENIES the motion.

## II

### BACKGROUND

On January 24, 2026, Petitioner Dave Neil Speedie (Father) filed a petition with this Court under the International Child Abduction Remedies Act (ICARA), 22 U.S. §§ 9001–9011, the statute that implements the Hague Convention on the Civil Aspects of International Child Abduction (the Convention), Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 49.  *See*

ORDER - 1

*generally* Dkt. # 1 (original petition); Dkt. # 26 (amended petition).  Father seeks the return of his minor children, L.S. and I.S., from Washington, where they are presently in the custody of Respondent Alexi Dawn Speedie (Mother).  *See id.* ¶¶ 12, 23.

On May 7, 2026, Mother, through counsel, served document requests (RFPs) on Father.  *See* Dkt. # 48-1.  As pertinent here, Mother sought from Father "[c]opies of any and all of your medical, mental health, therapeutic, and/or counseling records, from the year 2023 to the present date, including but not limited to health charts, therapy notes, prescriptions, provider referrals [*sic*], communications with care providers, etc."  *Id.* at 5 (RFP # 2).  Separate from the RFPs, Mother also sought the production of "materials reviewed and relied upon" by Fraser MacLean, retained by Father to provide a declaration under the Convention's Article 14.[1]  Dkt. # 48-2 at 3; *see also* Dkt. # 46 (Affidavit of Canadian Law).  Father, through counsel, declined to produce records related to therapy, claiming privilege, and the underlying file of MacLean.  Dkt. # 48-3 at 1.  During a fruitless meet-and-confer,[2] the parties also discussed, but did not determine, whether and how this Court would receive testimony from A.N., a minor.  *Id.*

Mother now moves the Court for an order compelling (1) the production of the therapy records, (2) the production of MacLean's file; (3) the parties to keep conferring regarding the procedures related to A.N.'s testimony (Dkt. # 50); and (4) fees and costs.  *See* Dkt. # 48 at 2.

**III**

---

[1] Article 14 of the Convention permits this Court to "take notice directly of the law of, and of judicial or administrative decisions, . . . in the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable."  *See* Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 49, art. 14 (available online at https://www.fjc.gov/sites/default/files/2016/Text%20of%20the%201980%20Hague%20Convention.pdf); *see also Baxter v. Baxter*, 423 F.3d 363, 370 n.4 (3d Cir. 2005) ("The Convention permits courts to take judicial notice of the law of the country of habitual residence in answering [] questions" of whether the child was taken in contravention of the treaty).

[2] Mother certifies that, on May 19, 2026, the parties' counsel made a good-faith effort to confer regarding the issues raised in this motion.  *See* LCR 37(a)(1)(B).

ORDER - 2

**DISCUSSION**

A.    Discovery Standards

Under Federal Rule of Civil Procedure 26(b)(1),

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

And a party may move a court for an order compelling disclosure or discovery. *See* Fed. R. Civ. P. 37(a)(1). "The court may order a party to provide further responses to an 'evasive or incomplete disclosure, answer, or response.'" *Doe v. Trump*, 329 F.R.D. 262, 270 (W.D. Wash. 2018) (citing Fed. R. Civ. P. 37(a)(4)). A court has "broad discretion" to permit or deny discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (citation omitted). "Although the party seeking to compel discovery has the burden of establishing that its requests" seek relevant material, the party resisting discovery bears the burden of showing that the discovery should not be permitted. *See Doe*, 329 F.R.D. at 270 (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

B.    Analysis

1.    Therapy records

Under RCW 18.83.110, "[c]onfidential communications between a client and a psychologist . . . shall be privileged against compulsory disclosure to the same extent and subject to the same conditions as confidential communications between attorney and client," with some exceptions under RCW 71.05.217 not pertinent here. Generally, the same privilege exists in federal law. *See Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). The privilege is a "procedural safeguard[]" that "derogate[s] from common law and therefore [is] strictly construed." *Petersen*

ORDER - 3

*v. State*, 100 Wash. 2d 421, 429, 671 P.2d 230 (1983).  But "a patient voluntarily placing his or her physical or mental condition in issue in a judicial proceeding waives the privilege with respect to information relative to that condition."  *Carson v. Fine*, 123 Wash. 2d 206, 213–14, 867 P.2d 610 (1994) (citing 1 J. Strong, *McCormick on Evidence* 384 (4th ed. 1992); 8 J. Wigmore *Evidence* § 2389, at 855 (1961)).  A litigant may so waive the patient-psychologist privilege when, for example, as a plaintiff they allege emotional harm in a complaint.  *See Lodis v. Corbis Holdings, Inc.*, 172 Wash. App. 835, 855, 292 P.3d 779 (2013) ("Thus, when a plaintiff puts his mental health at issue by alleging emotional distress, he waives his psychologist-patient privilege for relevant mental health records.").  A person might also waive the patient-psychologist privilege impliedly if that "person testifies, introduces evidence, or fails to object to another's testimony as to the ailment or privileged conversation."  *Magney v. Truc Pham*, 195 Wash. 2d 795, 813, 466 P.3d 1077 (2020).

Here, Father's Petition makes no allegation about his mental health, and he does not otherwise appear to have made it an issue.  *See generally* Dkt. # 26.  Mother's Answer states that Father has "demonstrated ongoing instability, including mental instability, excessive alcohol use and volatile and erratic behavior, creating an unsafe and unpredictable environment for the children."  Dkt. # 32 at 8.  But those assertions do not suffice to defeat the privilege.  For the privilege to overcome, it must be waived, and Father has not put his own mental health at issue.  There does not appear to be any other way under Washington law to overcome the privilege.  Accordingly, Washington law entitles Father to maintain the patient-psychologist privilege and refuse to produce records of his therapy.  *Cf. Sims v. Lakeside Sch.*, 2007 WL 5417731, at *1–2 (W.D. Wash. Mar. 15, 2007) (granting protective order preventing disclosure of psychological records because the "psychotherapist-patient privilege . . . has not been waived").

ORDER - 4

2.      MacLean's file

Mother also seeks the materials reviewed and relied upon for the affidavit of foreign law provided by MacLean (Dkt. # 46) pursuant to Article 14 of the Convention.  Dkt. # 48 at 2.  She makes little argument, but states that Rules 26 and 37 provide a basis for this Court to compel the production of the records that MacLean used to generate his Article 14 affidavit.  *See id.* at 2–3. Father responds that Mr. MacLean is not an expert witness subject to the disclosure requirements of Rule 26(a)(2), but an Article 14 affiant falling under Rule 44.1.  *See* Dkt. # 51 at 6–10; *see also* Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.").

In the affidavit, MacLean states as follows:

5.      I have reviewed the following pleadings and papers in my research and drafting of this Affidavit:

A. Pleadings and papers filed in this case (Dkt. Nos. 1-43); and

B. Both parties' Initial Disclosures, all supplements thereto, and any documents produced therewith through the date of execution of this Affidavit; and

C. All legal authority cited in and/or attached to this Affidavit.

Dkt. # 46 ¶ 5.  Father argues that the underlying material used in MacLean's affidavit has thus already been provided to Mother, since they are attached to the affidavit at Dkt. # 46.  It is unclear to the Court what information, other than that already attached to the affidavit and available to Mother and her counsel, has not been made available.  Mother does not indicate what else she might need.  MacLean's submission includes the portions of Canadian law cited and discussed in the affidavit.  *See, e.g.*, Dkt. # 46-2 (Exhibit B, reproducing sections of British

ORDER - 5

Columbia's Family Law Act); Dkt. # 46-4 (Exhibit D, reproducing *B.D.M. v. A.E.M.*, 2014 BCSC 453, a case from the Supreme Court of British Columbia).  The Ninth Circuit has noted that, in cases brought under the Convention, the "district court is not precluded from considering the source of the information" provided under an Article 14 declaration."  *Shalit v. Coppe*, 182 F.3d 1124, 1129 (9th Cir. 1999), *as amended on denial of reh'g and reh'g en banc*, (Sept. 14, 1999).  Here, the Court and the parties may consider the sources of MacLean's affidavit since they are available on the docket.  The Court thus denies this request as moot.

        3.      A.N.'s testimony

Finally, Mother seeks the testimony of A.N., a minor whose relationship to the case has not been elucidated by the parties.  Mother apparently seeks an in camera interview of A.N. by the Court with counsel present.  Dkt. ## 48 at 3, 48–3 at 1.  Father wants A.N. testify in open court, but concedes that, should A.N. be interviewed in chambers, it should be conducted on the record, with a court reporter, and without counsel.  Dkt. # 51 at 10–11.  Father also suggests that the Court should wait until the evidentiary hearing to decide on the procedure for A.N.'s testimony.  *Id.* at 11.

First, the Court notes that "the party seeking to compel discovery has the burden of establishing that its requests" seek relevant material.  *See Doe*, 329 F.R.D. at 270.  Here, Mother has not explained in her motion why A.N.'s testimony would be relevant to any issues in this case.  In any event, should A.N.'s testimony be sought, the Court agrees with Father that it need not determine the procedure for A.N.'s testimony at this stage.  During the evidentiary hearing, it may become apparent that A.N.'s testimony is not needed, which would moot this request.

ORDER - 6

## IV

### CONCLUSION

For the reasons above, the Court DENIES the motion at Dkt. # 48.

Dated this 26th day of May, 2026.

John H. Chun
United States District Judge

ORDER - 7