UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVE NEIL SPEEDIE,

      Petitioner,

  v.

ALEXI DAWN SPEEDIE,

      Respondent.

CASE NO. 2:26-cv-00345-JHC

ORDER

# I

## INTRODUCTION

This matter comes before the Court on Respondent Alexi Dawn Speedie's Renewed Motion to Compel Pursuant to FRCP 37.  Dkt. # 69.  The Court has considered the materials filed in support of and in opposition to the motion, pertinent portions of the record, and the applicable law.  Being fully advised, for the reasons below, the Court DENIES the motion.

# II

## BACKGROUND

On January 24, 2026, Petitioner Dave Neil Speedie (Father) filed a petition with this Court under the International Child Abduction Remedies Act (ICARA), 22 U.S. §§ 9001–9011, the statute that implements the Hague Convention on the Civil Aspects of International Child

ORDER - 1

Abduction (the Convention), Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 49. *See generally* Dkt. # 1 (original petition); Dkt. # 26 (amended petition). Father seeks the return of his minor children, L.S. and I.S., from Washington, where they are presently in the custody of Respondent Alexi Dawn Speedie (Mother). *See id.* ¶¶ 12, 23.

On May 7, 2026, Mother, through counsel, served document requests (RFPs) on Father. *See* Dkt. # 48-1. As pertinent here, Mother sought from Father "[c]opies of any and all of your medical, mental health, therapeutic, and/or counseling records, from the year 2023 to the present date, including but not limited to health charts, therapy notes, prescriptions, provider referrals [*sic*], communications with care providers, etc." *Id.* at 5 (RFP # 2). Separate from the RFPs, Mother also sought the production of "materials reviewed and relied upon" by Fraser MacLean, retained by Father to provide a declaration under the Convention's Article 14.[1] Dkt. # 48-2 at 3; *see also* Dkt. # 46 (Affidavit of Canadian Law). Father, through counsel, declined to produce records related to therapy, claiming privilege, and the underlying file of MacLean. Dkt. # 48-3 at 1.

Mother then moved to compel the production of the therapy records and MacLean's file. *See* Dkt. # 48 at 2. The Court denied that motion. *See* Dkt. # 52. As the Court reasoned, Father's therapy records could only be produced if he waived the psychologist-patient privilege or made his mental health an issue (such as by alleging emotional harm in a pleading), but that he had done neither. *Id.* at 3–4. As to MacLean's file, the Court denied Mother's motion as

---

[1] Article 14 of the Convention permits this Court to "take notice directly of the law of, and of judicial or administrative decisions, . . . in the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable." *See* Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 49, art. 14 (available online at https://www.fjc.gov/sites/default/files/2016/Text%20of%20the%201980%20Hague%20Convention.pdf); *see also Baxter v. Baxter*, 423 F.3d 363, 370 n.4 (3d Cir. 2005) ("The Convention permits courts to take judicial notice of the law of the country of habitual residence in answering [] questions" of whether the child was taken in contravention of the treaty).

ORDER - 2

moot since his affidavit of Canadian law included all the sources he had used in producing it. *Id.* at 5–6.

Mother now renews her motion to compel[2] the therapy records and MacLean's file. *See generally* Dkt. # 69. She contends that Father waived the psychologist-patient privilege and that MacLean's affidavit amounts to expert testimony, justifying further disclosures of source material than those already provided. *Id.* At trial, Mother's counsel also stated that Father's testimony and two related exhibits also waive the privilege.

### III

### DISCUSSION

A.    Discovery Standards

Under Federal Rule of Civil Procedure 26(b)(1),

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

And a party may move a court for an order compelling disclosure or discovery. *See* Fed. R. Civ. P. 37(a)(1). "The court may order a party to provide further responses to an 'evasive or incomplete disclosure, answer, or response.'" *Doe v. Trump*, 329 F.R.D. 262, 270 (W.D. Wash. 2018) (citing Fed. R. Civ. P. 37(a)(4)). A court has "broad discretion" to permit or deny discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (citation omitted). "Although the party seeking to compel discovery has the burden of establishing that its requests" seek relevant material, the party resisting discovery bears the burden of showing that the discovery

---

[2] Mother certifies that, on May 19, 2026, the parties' counsel made a good-faith effort to confer regarding the issues raised in this motion. *See* LCR 37(a)(1)(B).

ORDER - 3

should not be permitted.  *See Doe*, 329 F.R.D. at 270 (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

B.      Analysis

1.      Therapy records

Mother argues that Father waived the psychologist-patient privilege by putting his mental health at issue.  *See* Dkt. # 69 at 4–5.  Mother says that Petitioner did so by submitting at trial the following exhibits: (1) a "Treatment Confirmation" from his psychologist, Dkt. # 54 at 14 (exhibit 18), and (2) text messages between the parties, *id.* (exhibit 15).

Under RCW 18.83.110, "[c]onfidential communications between a client and a psychologist . . . shall be privileged against compulsory disclosure to the same extent and subject to the same conditions as confidential communications between attorney and client," with some exceptions under RCW 71.05.217 not pertinent here.  *See also Jaffee v. Redmond*, 518 U.S. 1, 15 (1996) (describing the same privilege in federal law).  But "a patient voluntarily placing his or her physical or mental condition in issue in a judicial proceeding waives the privilege with respect to information relative to that condition."  *Carson v. Fine*, 123 Wash. 2d 206, 213–14, 867 P.2d 610 (1994) (citing 1 J. Strong, *McCormick on Evidence* 384 (4th ed. 1992); 8 J. Wigmore *Evidence* § 2389, at 855 (1961)).  The typical way this occurs is when a plaintiff seeks "emotional harm damages," such as by pleading them in a complaint.  *Lodis v. Corbis Holdings, Inc.*, 172 Wash. App. 835, 856, 292 P.3d 779 (2013).  And as pertinent here, a person might also waive the patient-psychologist privilege impliedly if that "person testifies, introduces evidence, or fails to object to another's testimony as to the ailment or privileged conversation."  *Magney v. Truc Pham*, 195 Wash. 2d 795, 813, 466 P.3d 1077 (2020); *see also McUne v. Fuqua*, 42 Wash. 2d 65, 74–75, 253 P.2d 632 (1953) (analogous physician-patient privilege waived when, for example, litigant permits their doctor to testify about their injuries).

ORDER - 4

Exhibit 15 consists of approximately 67 pages of images showing text messages between Father and Mother from July 2024 to May 2025.  At times, Father sent distressing text messages to Mother, including graphic references to suicide, Ex. 15 at DS001291–92, DS001294, DS001296, DS001333, to "brain damage," *id.* at DS001293, and his own "wrong state of mind," DS001334.  Exhibit 18 is a letter from a psychologist stating only that Father met with him three times; it also includes what appears to be a receipt for one such session.  Referring to Petitioner's behavior, his counsel ask him if he would continue behaving like that if the children returned to Canada.  In response, Petitioner testified that he would change his behavior, and that he had "started doing counseling[.]"  Rough transcript at 74:19–20.

The question whether, through the foregoing, Father has "testifie[d]" or "introduce[d] evidence" about his mental health to raise it as an issue and impliedly waive the psychologist-patient privilege.  *Magney*, 195 Wash. 3d at 813.  Despite *Magney*'s statement that testimony or the introduction of evidence about mental health can waive the privilege, the Court has located no case in which a court held the privilege waived through such testimony or introduction of evidence outside the scenario where the party benefitting from the privilege alleged emotional harm or sought damages for emotional harm.  Here, Father has not raised his mental health as an issue by alleging emotional harm in a pleading, the most common scenario in which Washington courts have found the issue of mental health raised.  At the outset, then, this suggests that Plaintiff has not waived the privilege.

The two closest cases in which a court held that a party *not* pleading emotional harm or seeking related damages determined that the party had waived the privilege because their emotional condition or mental health was related to an underlying disability claim.  *See Macon v. United Parcel Serv., Inc.*, 2013 WL 951013, at *3–4 (W.D. Wash. Mar. 12, 2013) (finding waiver of psychologist-patient privilege where mental health was relevant to the plaintiff's

ORDER - 5

disability claim); *Konda v. United Airlines, Inc.*, 2023 WL 2864562, at \*4 (W.D. Wash. Apr. 10, 2023) (allegations as to specific psychological injuries like anxiety connected to disability claim waived psychologist patient privilege). But these two cases are not on fours with the present situation.

In all, despite *Magney*'s comment, there do not appear to be cases in which the reference to or evidence about poor or improving mental health triggers a waiver of the psychologist-patient privilege.

Addressing exhibit 18 specifically, the fact of Father's client relationship with a psychologist is not enough to defeat the privilege either. Communications under the psychologist-patient privilege are "privileged against compulsory disclosure *to the same extent and subject to the same conditions* as confidential communications between attorney and client." RCW 18.83.110 (emphasis added). And as Father points out, under Washington law, "the identity of an attorney's clients and the nature of fee arrangements with clients are not confidential communications protected by the attorney-client privilege." *State v. Sheppard*, 52 Wash. App. 707, 711, 763 P.2d 1232 (1988) (citations omitted); *see also R.A. Hanson Co. v. Magnuson*, 79 Wash. App. 497, 502, 903 P.2d 496, 499 (1995) ("As a general rule, client identity and fee information do not fall within the privilege because that information typically reveals no confidential professional communication between the attorney and client.") (citing *Seventh Elect Church v. Rogers*, 102 Wash.2d 527, 531, 688 P.2d 506 (1984)). Father's disclosure of the fact that he was a client of a psychologist, since it is not covered by the psychologist-patient privilege in the first place, thus cannot operate as an implied waiver of that privilege.

2.    MacLean's file

This issue has been addressed to some extent at the trial.

ORDER - 6

Mother argues that MacLean's file should be produced in its entirety because his testimony goes beyond a description of the content of Canadian law, controlled by Rule 44.1, and into expert testimony subject to disclosure requirements of Rule 26(a)(2).  Dkt. # 69 at 5–8. Mother argues MacLean's testimony does so because it opines on the facts of the case and takes a position in favor of Father.  *Id.* at 7 (citing, e.g., Dkt. # 46 ¶ 25 (affidavit) ("Mother's retention of the children in the United States from Canada therefore breached Father's ex lege Canadian rights of custody to the children under Canadian law.").  Mother says that this justifies the compelled production of MacLean's entire file, "including his communications with counsel, notes, [and] any other document contained within his expert file."  *Id.* at 8 (citing Fed. R. Civ. P. 26(a)(2)(B)).

It is true, as Mother cites, that courts have criticized testimony about foreign law that goes beyond a description of the content of that law, controlled by Rule 44.1 and not subject to the disclosure requirements of Rule 26, and into expert testimony that is subject to disclosure requirements.  *See, e.g.*, *Labuda v. Schmidt*, 2005 WL 2290247, at *6 (N.D. Ill. Sept. 19, 2005) (denying defendants' motion for a determination that the law of Ontario applies to case).  But even if MacLean is an expert subject to disclosure requirements under Rule 26, those requirements do not require the disclosure of MacLean's entire file, including "communications with counsel."  Rule 26(a) requires experts to disclose the following materials as part of their written report:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

ORDER - 7

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). The 1993 advisory committee's notes, which Mother also cites, state that the disclosure obligations in Rule 26(a)(2)(B) comprise "the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions." *Id.* 1993 advisory committee's notes on paragraph (2). Further, Rule 26(b)(4) protects communications between counsel and experts "except to the extent that the communications: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." Fed. R. Civ. P. 26(b)(4)(c).

None of these required disclosures include the information that Mother seeks. MacLean's affidavit states:

5.    I have reviewed the following pleadings and papers in my research and drafting of this Affidavit:

A. Pleadings and papers filed in this case (Dkt. Nos. 1-43); and

B. Both parties' Initial Disclosures, all supplements thereto, and any documents produced therewith through the date of execution of this Affidavit; and

C. All legal authority cited in and/or attached to this Affidavit.

ORDER - 8

Dkt. # 46 ¶ 5. MacLean's affidavit's factual section appears to derive its factual background from his "review of the pleadings and papers in this case." *Id.* ¶¶ 6–8. MacLean does not aver anywhere in his affidavit that he relied on statements or communications from counsel to develop his opinion. Nor does Mother point to any authority compelling the production, as part of expert disclosures, of communications between an expert and the counsel retaining them. Neither does she cite any other authority justifying the broad disclosure that she seeks.

## IV

### CONCLUSION

For the reasons above, the Court DENIES the motion.

Dated this 3rd day of June, 2026.

John H. Chun
United States District Judge

ORDER - 9